UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NESPRESSO USA, INC.,

       Plaintiff,

  -v-                                    No.  15CV5553-LTS

AFRICA AMERICA COFFEE TRADING
CO. LLC D/B/A LIBRETTO,

       Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

In this infringement action, Plaintiff Nespresso USA, Inc. ("Nespresso" or "Plaintiff"), asserts that Defendant Africa America Coffee Trading Co. LLC d/b/a Libretto ("Libretto" or "Defendant"), infringed Plaintiff's trademark and trade dress, and engaged in unfair competition, in violation of both the Lanham Act and New York state law.  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

Plaintiff now moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a default judgment against Defendant.  Plaintiff seeks a judgment on the merits against Defendant as to each of its Causes of Action, a permanent injunction barring Defendant's use of the Nespresso trademark and trade dress, and destruction of any of Defendant's remaining inventory that utilizes the Nespresso trademark or trade dress.  Defendant has failed to appear in this action and has not opposed the instant motion.  The Court has carefully reviewed Plaintiff's motion and, for the reasons stated herein, the motion for default judgment is granted in part and denied in part.

BACKGROUND[1]

Plaintiff Nespresso is a well-known espresso and coffee machine producer, and the exclusive licensee of the federally registered trademark "Nespresso." (Docket Entry No. 1, Compl. ¶ 9, see also Ex. B (Nespresso Trademarks).) Nespresso also makes and sells espresso capsules for use with its espresso machines. (Id.) Nespresso's capsules have a cone-shaped bottom surface and are sold in long, thin, rectangular packaging. (Id., Ex. A (Nespresso Packaging).)

Defendant Libretto was founded in or around January 2014. (Id. ¶ 11.) Libretto also manufactures espresso capsules, which are compatible with Nespresso machines. (Id.) While Libretto's capsules are made of plastic and Nespresso's are made of aluminum, the capsules are otherwise similar in size, shape, and color. (Id. ¶ 15-16, Fig. 6-9.) Libretto capsules are also sold in long, thin, rectangular boxes, similar to those in which Nespresso capsules are sold. (Id. ¶ 14, Fig. 4.) The lower right-hand corner of Libretto's boxes features a red and white text box that reads "Nespresso® compatible," with the word "Nespresso" written in a highly stylized manner. (Id.) The same "Nespresso® compatible" text box can be found on Libretto's website. (Id., Fig. 5.)[2] Libretto sells (or sold) its products through its website and through other online merchants such as Amazon.com. (Id. ¶ 12.) Libretto also uses the word "Nespresso" as a metatag in the source code for its website. (Id. ¶ 13, see Fig. 3.)

Believing that Libretto's product infringed on its trademark and trade dress,

---

[1] The facts recited herein are drawn from Plaintiff's Complaint ("Compl.") in this action. In light of Defendant's failure to respond to the Complaint, Plaintiff's well-pleaded factual allegations are deemed admitted for purposes of this motion practice. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.")

[2] Libretto's website, librettoespresso.com, is no longer accessible. It is therefore not clear to the Court whether the company continues to operate.

Nespresso attempted to contact Libretto on May 7, June 9 and July 11 of 2014, to request that it stop producing and selling Libretto espresso capsules.  (Compl. ¶ 2.)  After receiving no response, Nespresso filed its Complaint on July 16, 2015, asserting six Causes of Action against Libretto: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(d); (3) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (4) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); (5) unlawful deceptive acts and practices under New York General Business Law § 349(a); and (6) common law unfair competition.  (See generally id. ¶¶ 20-80.)  Nespresso served Libretto with the Summons and Complaint on September 29, 2015.  (See Docket Entry No. 13.)  Libretto has since failed to appear in this action.  On November 2, 2015, this Court granted Nespresso permission to move for default judgment.  (See Docket Entry No. 15.)  On November 10, 2015, Libretto was served with notice of the Court's order permitting default judgment motion practice.  (See Docket Entry No. 17.)  The Clerk of the Court issued a certificate of default against Libretto on November 19, 2015 (see Docket Entry No. 20), and Nespresso thereafter filed the instant motion for default judgment.  (Docket Entry No. 21.)  Nespresso's motion is accompanied by evidentiary proffers and exhibits supporting its claims, as well as a memorandum of law.  (Docket Entry Nos. 22, 23.)

DISCUSSION

Default Judgment Standard

In determining whether to grant a motion for default judgment, a court within this district considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. National Settlement Agency, Inc., No. 07CV6865-LTS-GWG, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (internal citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgement).  Once the court finds that these factors favor the plaintiff, it must determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  The Court finds that all three factors articulated by the Court in Indymac weigh in Nespresso's favor.[3]

*Nespresso's First Cause of Action: Trademark Infringement*

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion . . . The Act similarly prohibits the infringement

---

[3]  Libretto's non-appearance and failure to respond to Nespresso's Complaint or Motion to Dismiss indicates willful conduct.  Indymac Bank, F.S.B., 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a Complaint or Motion for Default Judgment indicates willful conduct.).  With respect to the second factor, because Libretto has failed to appear in this action, the Court is unable to determine whether it might be able to present any meritorious defense to Nespresso's claims.  Finally, the Court finds that Nespresso will be prejudiced if it is unable to defend the integrity of its trademark and trade dress in light of Libretto's default in this case.

of unregistered, common law trademarks." Time, Inc. v. Petersen Pub. Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999) (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)).  Nespresso's First Cause of Action alleges that Libretto committed trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), by using the registered "Nespresso" mark in connection with the manufacture, offering for sale, and sale of Libretto's espresso capsules.  In order to prove infringement under the Lanham Act § 1114(1), Nespresso must show that it possesses a valid mark that is entitled to protection and that Libretto's use of the mark is likely to cause confusion.  Time, Inc., 173 F.3d at 117.  In addition, the Second Circuit has recognized the concept of nominative use, which "involves [the defendant] using the mark at issue as a mark to specifically invoke the mark-holder's mark, rather than [using it] other than as a mark, to describe the alleged infringer's goods or services." International Information Systems Sec. Certification Consortium, Inc. v. Security University, LLC, No. 14-3456-CV, 2016 WL 2893172, at *12 (2d Cir. May 18, 2016) (emphasis in original).  The Second Circuit has held that, in such cases, "in addition to discussing each of the Polaroid factors, courts are to consider: (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." International Information Systems, 2016 WL 2893172, at *13.

    As an initial matter, Nespresso has proffered uncontroverted evidence that it owns the exclusive license to use of the word mark Nespresso, which is a registered trademark.  (Compl.,

Ex. B.). Federal registration of a mark constitutes prima facie evidence of the mark's validity. Lane Capital Management, Inc. v. Lane Capital Management, Inc, 192 F.3d 337, 345 (2d Cir. 1999). Thus, Nespresso has demonstrated that its mark is valid and entitled to protection. In order to determine the likelihood of confusion, courts within the Second Circuit weigh the factors set out in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961) (the "Polaroid factors"). There are eight Polaroid factors, none of which is individually dispositive: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity of the products within the market place; (4) the likelihood plaintiff will bridge the gap between the products; (5) evidence of actual confusion among consumers; (6) the sophistication of the relevant consumer population; (7) the defendant's good or bad faith; and (8) the relative quality of the products. Polaroid, 287 F.2d at 495. In this case, the majority of the Polaroid factors favor Nespresso, and the weight of these factors on balance is sufficient to prove a likelihood of confusion.

The first Polaroid factor, the strength of the plaintiff's mark, favors Nespresso. This factor is concerned with the distinctiveness of a mark in the eyes of the consuming public. Savin Corp. v. Savin Group, 391 F.3d 439, 457 (2d Cir. 2004). A federally registered mark is presumed to be distinctive with respect to the goods or services that the registration covers. Savin Corp., 391 F.3d at 457. Nespresso has registered the mark Nespresso in association with both coffee and coffee extracts. (Compl. at Ex. B.)  Therefore, the strength of Nespresso's mark is presumed in this case.

The second Polaroid factor, which examines the similarity of the marks, also favors Nespresso. Courts use this factor to determine whether the similarity of the marks is likely to cause confusion among ordinarily prudent consumers. Id. "[T]he 'impression' conveyed by the setting in which the mark is used is often of critical importance." Id. (internal citation omitted). Here,

Libretto uses the stylized word mark "Nespresso," which is identical to the mark for which Nespresso has trademark protection. Libretto uses this word mark on its packaging and website, though its use is followed by the modifying word "compatible" (Compl. ¶ 1, Figs. 1, 4, 5, 11), and the relative size of the phrase "Nespresso compatible" is small when compared with the size of the word "Libretto" on Libretto's packaging and website. (See id.) However, Libretto's packaging nonetheless displays the phrase "Nespresso compatible" prominently in a highly stylized font, and in colors that make the mark stand out, particularly when compared with the more subtle use of the brand name Libretto on the box. (Compl. ¶ 14, Fig. 4.) This use is likely to be particularly eye-catching to the consumer, arguably more so than the more subtle Libretto logo at the top of the packaging. (Id.) Libretto's use of the word mark Nespresso, which is identical to Nespresso's own mark, thus creates a likelihood of confusion, and the second Polaroid factor therefore weighs in Nespresso's favor.

Both the third Polaroid factor – proximity of the products in the marketplace – and the fourth Polaroid factor – likelihood of Nespresso bridging the gap – favor Nespresso. The "[bridging the gap] factor looks to either the likelihood that [plaintiff] will enter [defendant's] business or the average customer's perception of the likelihood that the plaintiff would enter the defendant's market." The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2d Cir. 1996). The products offered by both Nespresso and Libretto in this case are the same: espresso capsules. There is clear proximity in the marketplace, since both Nespresso and Libretto operate in the same market and sell the same type of goods. Because the products offered by Nespresso and Libretto are for all intents and purposes the same, and the market they operate in is identical, there is no gap for Nespresso to bridge.

The fifth Polaroid factor, evidence of actual confusion, is neutral. Nespresso has

made uncontroverted allegations of consumer confusion in its Complaint.  (See Compl. ¶¶ 14, 17, 22, 36, 58.)  However, no discovery has taken place in this action and Nespresso has proffered no evidence that affirmatively demonstrates the existence of consumer confusion.  Thus, the Court finds that this factor favors neither party.

The sixth Polaroid factor, which examines the good or bad faith of the defendant party in adopting the mark, is also neutral.  This factor is meant to take into account whether a mark has been adopted by a defendant with the intent to capitalize on the plaintiff's reputation and goodwill.  Savin Corp., 391 F.3d at 460.  The fact that Libretto had prior knowledge of Nespresso's use of the trademark is not necessarily indicative of bad faith.  Id.  However, the Court once again notes that, while Libretto uses the Nespresso mark within the context of the statement "Nespresso compatible," the mark is used in a prominent, highly-stylized manner that appears to be intended to catch the eye of the consumer.  Such use appears likely to cause confusion with respect to Nespresso's possible endorsement of, or affiliation with, Libretto's products, and thus weighs against a finding of good faith.  This factor is, therefore, at best neutral.

The seventh Polaroid factor, the relative quality of the products, favors Libretto. While a marked difference in the quality between a plaintiff's goods and a defendant's allegedly infringing goods is more likely to cause harm to a senior user, it is also less likely to cause consumer confusion.  Savin Corp., 391 F.3d at 461 ("A marked difference in quality . . . actually tends to reduce the likelihood of confusion in the first instance, because buyers will be less likely to assume that the senior user whose product is high-quality will have produced the lesser-quality products of the junior user.").  In light of the fact that the Polaroid factors are concerned with likelihood of confusion, id. at 456, this factor favors Libretto.  Libretto advertises that its product is made with plastic while Nespresso's product is made with higher-quality aluminum.  (Compl.

¶ 16.)  By highlighting the marked difference in quality, Libretto actually decreases the likelihood of confusion between the products.  Savin Corp., 391 F.3d at 461.

The eighth Polaroid factor, the sophistication of the relevant consumer population, favors Nespresso.  Given that this case deals with relatively inexpensive goods, the relevant consumers are unlikely to be exceptionally sophisticated and are therefore more likely to be confused.  See Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 220 (2d Cir. 1999) (noting that purchasers of relatively inexpensive goods are assumed to be less sophisticated and more susceptible to confusion) (abrogated on other grounds).

After careful analysis, it is apparent that five of the eight Polaroid factors favor Nespresso, while two of the factors are at best neutral, and only a single factor favors Libretto.  Based on the record before it, the Court concludes that Libretto used the Nespresso mark in a manner that was likely to cause consumer confusion with respect to Nespresso's possible endorsement of, or affiliation with, Libretto's products.  Nespresso has thus met its burden of demonstrating a likelihood of confusion under the Polaroid factors with respect to its First Cause of Action.

Moreover, while the Lanham Act permits one competitor to use "another's registered trademark to describe aspects of one's own goods, even to indicate that one's product is a legitimate copy of another's product,"  Mattel, Inc. v. Azrak-Hamway Intern., Inc., 724 F.2d 357, 361 (2d Cir. 1983); Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102-03 (2d Cir. 2010) (noting that "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant."), the Court finds that Libretto's use of the Nespresso mark in this case fits the definition of "nominative use" as set out by the Second Circuit; that is, Libretto has used the mark

at issue "as a mark to specifically invoke [Nespresso]'s mark, rather than [in order] to describe [Libretto]'s goods or services." International Information Systems, 2016 WL 2893172, at *12 (emphasis in original). In such a scenario, the Court must consider the nominative fair use factors enumerated by the Second Circuit. Id. at *13.[4] Here, the Court finds that Libretto's highly stylized, eye-catching use of the Nespresso mark is likely to create "confusion regarding affiliation, sponsorship, or endorsement by" Nespresso. Id., at *13. The Court further finds that, with respect to the second nominative fair use factor, Libretto "step[ped] over the line into a likelihood of confusion by using the [Nespresso] mark too prominently . . . in terms of . . . emphasis." Id. (internal quotation marks and citations omitted). Consideration of the nominative fair use factors recognized by the Second Circuit therefore weighs heavily in favor of a finding of liability with respect to infringement on the part of Libretto.

Based on the record before it, the Court finds that Libretto is liable for trademark infringement and, therefore, Nespresso's motion for default judgment with respect to its First Cause of Action is granted.[5]

---

[4] The Court recognizes that, with respect to the first nominative fair use factor articulated by the Second Circuit, "whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service," International Information Systems, 2016 WL 2893172, at *13, it is questionable whether Libretto's use of the Nespresso mark was necessary in order to describe its products' compatibility with Nespresso coffee machines. Libretto's Facebook site claimed that its capsules are "[a] tribute to . . . the science at work in the machines made by Nestle® and other manufacturers" (Compl. ¶ 16) (emphasis supplied)), suggesting that the capsules might be compatible with a wider range of machines.

[5] Nespresso's Fifth Cause of Action is for unlawful and deceptive acts and practices under New York General Business Law § 349(a), and its Sixth Cause of Action asserts a claim of common law unfair competition. Analysis of claims brought under the New York General Business Law and the common law is substantially similar to analysis of claims asserted under the Lanham Act. Novo Nordisk A/S v. Becton Dickinson & Co., 997 F. Supp. 470, 472 n.1 (S.D.N.Y.

*Nespresso's Second and Third Causes of Action: False Designation of Origin*

The Second Cause of Action asserted by Nespresso alleges that Libretto's use of the "Nespresso" mark in the metatags of Libretto's website creates a false designation of origin in violation of the Lanham Act. Section 1125(d) of the Lanham Act, known as the Anti-Cybersquatting Consumer Protection Act ("ACPA"), applies to trademark infringement in website domain names. See generally Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The ACPA, however, does not apply to the use of metatags; it explicitly dictates liability only for a person who "registers, traffics in, or uses a domain name that" creates confusion with respect to the use of a mark. 15 U.S.C.S. § 1125(d)(1)(A)(ii) (LexisNexis 2015); see also Bihari v. Gross, 119 F. Supp. 2d 309, 316 (S.D.N.Y. 2000) ("Neither Bihari's attorney, nor this Court, has been able to find a single case applying the ACPA to metatags. Although no court has expressly stated that the ACPA does not apply to metatags, the plain meaning of the statute and its legislative history make this conclusion apparent."). Nespresso does not allege or demonstrate that Libretto used its mark in Libretto's actual domain name and thus, Nespresso, has not established a violation of this particular provision of the Lanham Act. The Court therefore denies Nespresso's motion for default judgment with respect to its Second Cause of Action.

Nespresso has, however, successfully demonstrated Libretto's liability with respect

---

1998) (noting that "the analysis under the New York General Business Law is the same as under the Lanham Act."); Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 339, 363 (S.D.N.Y. 1998) (noting that "it is well recognized the standard for Section 43(a) claims of the Lanham Act and unfair competition claims under New York law are almost indistinguishable."); Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., No. 12CV1416-GBD, 2014 WL 3874193, at *13 n.9 (S.D.N.Y. Aug. 5, 2014) ("The same standard that applies to the parties' Lanham Act claims also applies to their unfair competition and common law trademark claims.") Because Nespresso has demonstrated Libretto's liability on its Lanham Act claims, the Court grants Nespresso's motion for default judgment with respect to its New York state and common law claims as well.

to its Third Cause of Action, False Designation of Origin pursuant to 15 U.S.C. § 1125(a). "A false designation of origin or false description claim under the Lanham Act is similar to a trademark infringement claim except that it applies to unregistered as well as registered trademarks. To prevail on such a claim, a plaintiff must prove that 'first, . . . its mark merits protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion,' as to origin, sponsorship, or affiliation of the defendant's goods." Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc., 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010) (citing Muniz v. Morillo, No. 06CV6570-RJS, 2008 WL 4219073, at *5 (S.D.N.Y. Sept. 10, 2008)). The Court has already concluded that Libretto's use of the Nespresso mark is likely to cause confusion or mistake, or to deceive consumers as to the source or origin of Libretto's goods. See discussion supra. Thus, the Court finds that Nespresso has established Libretto's liability with respect to its false designation of origin claim brought pursuant to 15 U.S.C. 1125(a), and therefore grants Nespresso's motion for default judgment with respect to its Third Cause of Action. [6]

---

[6] Furthermore, in its briefing Nespresso cites the theory of "initial interest confusion," as articulated by the Ninth Circuit, in support of its claim that Libretto's use of the Nespresso mark in its metatags is likely to create confusion. See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036 (9th Cir. 1999). In Brookfield, the Ninth Circuit held that the use of metatags in source code could constitute a violation of the Lanham Act where such use might lead consumers from the trademark holder's website to the website of a competitor. See generally id. This initial confusion, in turn, might cause the consumer to remain on the competitor's website and utilize the competitor's goods or services instead of returning to the initially-sought mark holder's website. The Second Circuit has acknowledged and adopted the initial interest confusion doctrine, requiring a demonstration of a defendant's intent to confuse to prove liability. Savin Corp. 391 F.3d at 462 n.13 (noting that consumers diverted on the internet can more easily go back, which minimizes harm). Based on the entirety of the circumstances before it, which include both Libretto's prominent use of the Nespresso mark on its packaging and website, as well as in its metatags, the Court can infer that Libretto intended to create consumer confusion with respect to Nespresso's sponsorship or endorsement of its goods. Nespresso has therefore also demonstrated false designation of origin on a theory

*Nespresso's Fourth Cause of Action: Trade Dress Infringement*

Nespresso's Fourth Cause of Action against Libretto asserts a claim of trade dress infringement under the Lanham Act § 1125(a), alleging that Libretto's espresso capsules are nearly identical to Nespresso's. Nespresso alleges that Libretto's capsule shapes and colors infringe on Nespresso's trade dress, which consists of the cone-shaped capsule design, as well as the color scheme of its capsules. (Compl. ¶¶ 58-60.) In order to succeed on a claim of trade dress infringement, "a plaintiff must prove (1) that the mark or dress is distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of confusion between the plaintiff's good or service and that of the defendant." ITC, Ltd. v. Punchgini, Inc., 482 F.3d 135, 154 (2d Cir. 2007) (citations omitted).

In order to demonstrate that it is entitled to protection, Nespresso must prove that its trade dress is "either inherently distinctive or . . . has acquired distinctiveness through secondary meaning," and that the trade dress is nonfunctional. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). As an initial matter, Nespresso has made uncontroverted allegations with respect to Nespresso's heavily publicized use of its mark, as well as the consuming public's identification of its product's distinctive shape, design and color scheme. (Compl. ¶¶ 7, 8, 19, 54, 55.) Moreover, Nespresso has alleged that "[t]he Nespresso Trade Dress, as embodied in Nespresso's cone-shaped capsules, is inherently distinctive and/or has acquired secondary meaning, and is not functional." (Id. ¶ 54.) Libretto has not appeared in this action, and has offered no evidence or argument controverting Nespresso's allegations of the distinctiveness and non-functionality of its trade dress. The Court therefore finds that Libretto is liable for trade dress

---

of initial interest confusion liability based on Libretto's use of the Nespresso mark in its website metatags.

infringement under the Lanham Act, and grants Nespresso's motion for default judgment with respect to its Fourth Cause of Action.

## CONCLUSION

For the foregoing reasons, Nespresso's motion for default judgment is granted in part and denied in part. The Court denies Nespresso's motion with respect to its Second Cause of Action for false designation or origin pursuant to 15 U.S.C. § 1125(d). The motion is granted in all other respects, and the Court grants Nespresso the relief it seeks in the form of an Order:

(1) permanently enjoining Defendant Libretto, its agents, servants, employees, officers and all persons in active concern and participation with them: (a) from using the Nespresso Marks (as defined in the Complaint) or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Libretto Capsules (as defined in the Complaint) and in the meta tags of any websites dedicated to the same (including <librettoespresso.com>); (b) from using the Nespresso Trade Dress (as defined in the Complaint) or any trade dress similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Libretto Capsules; (c) from using any logo, trade name, trademark or trade dress which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Libretto are sponsored by, authorized by or in any way associated with the Plaintiff Nespresso or the Nespresso® brand; (d) from infringing Plaintiff Nespresso's exclusively licensed trademarks and trade dress; and (e) from falsely representing themselves as being

connected with, sponsored by or associated with Plaintiff Nespresso or the Nespresso® brand;

(2) ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Nespresso Marks or the Nespresso Trade Dress, including the Libretto Capsules;

(3) finding that, by the acts complained of by Nespresso as set forth in the Complaint, Defendant Libretto has infringed Nespresso's exclusively licensed federally registered trademarks in violation of 15 U.S.C. § 1114;

(4) finding that, by the acts complained of by Nespresso as set forth in the Complaint, Defendant Libretto has created a false designation of origin and false representation of association and has infringed the Nespresso Marks and the Nespresso Trade Dress in violation of 15 U.S.C. § 1125(a); and

(5) finding that, the acts complained of by Nespresso as set forth in the complaint, constitute willful infringement of the Nespresso Marks and the Nespresso Trade Dress.

The Court will sign and enter the Proposed Default Judgment (see Docket Entry No. 22-4) concurrently with the filing of this Memorandum Opinion and Order.

This Memorandum Opinion and Order resolves Docket Entry Number 21. The Clerk of Court is respectfully requested to enter judgment in Plaintiff's favor and close this case.

SO ORDERED.

Dated: New York, New York
       June 2, 2016

       /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge